UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **JAMES FLOWERS** | **CIVIL ACTION** |
| **VERSUS** | |
| **N. BURL CAIN, ET AL** | **NO. 08-603-B-M2** |

## NOTICE

    Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

    In accordance with 28 U.S.C. § 636(b)(1), you have 14 days from the date of service of this Notice to file written objections to the proposed findings of fact and conclusions of law set forth in the Magistrate Judge's Report. The failure of a party to file written objections to the proposed findings, conclusions, and recommendation contained in a Magistrate Judge's Report and Recommendation within 14 days after being served with a copy of the Report shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge that have been accepted by the District Court.

    **ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

    Signed in chambers in Baton Rouge, Louisiana, October 22, 2010.

**MAGISTRATE JUDGE CHRISTINE NOLAND**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**JAMES FLOWERS**                                         **CIVIL ACTION**

**VERSUS**

**N. BURL CAIN, ET AL**                                   **NO. 08-603-B-M2**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter is before the Court on the Petition for Writ of Habeas Corpus (R. Doc. 4) filed by James Flowers ("Flowers"). The State of Louisiana ("the State") has filed an opposition (R. Doc. 9-1) to Flowers' petition.

## PROCEDURAL BACKGROUND

Flowers was charged by bill of indictment with one (1) count of armed robbery, in violation of La. R.S. 14:64, in the 20th Judicial District Court, Parish of East Feliciana, State of Louisiana. Counsel was appointed for Flowers, and he was arraigned on January 13, 2004. He entered a plea of not guilty. Following a sanity hearing, the trial court found Flowers competent to stand trial. He was then tried by a jury and convicted as charged. Flowers filed motions for post-verdict judgment of acquittal and for a new trial, both of which were denied, and he was sentenced to seventy-five (75) years imprisonment at hard labor without the benefit of parole, probation, or suspension of sentence on October 12, 2004. Flowers also filed a motion to reconsider sentence, which was denied by the trial court on December 14, 2004.

On May 18, 2005, Flowers appealed his conviction and sentence to the Louisiana First Circuit Court of Appeals, which affirmed same on February 10, 2006. Flowers also

sought writs to the Louisiana Supreme Court, which were denied on November 9, 2006. He filed an application for post-conviction relief in the state trial court on or about November 16, 2006, which was denied on November 27, 2006. Flowers then sought writs to the First Circuit Court of Appeals and the Louisiana Supreme Court, which writ applications were denied on February 7, 2007 and January 7, 2008 respectively.

Flowers filed the present habeas petition on or about September 23, 2008,[1] wherein he asserts the following three (3) claims: (1) he was denied his right to confrontation due to the state trial court's denial of his objection to hearsay evidence; (2) he was denied his constitutional right to be informed of the nature and cause of the charges against him since the bill of indictment failed to state the victim's name; and (3) he was denied his constitutional right to effective assistance of counsel. The State does not assert that Flowers' habeas petition is untimely or that the claims contained therein are unexhausted, and the undersigned's review of the record indicates that the claims are both timely and exhausted.[2] Accordingly, the undersigned will review the merits of those claims herein.

---

[1] He did not, however, submit his habeas petition on proper forms until January 25, 2010.

[2] Although Flowers' appeal to the Louisiana Supreme Court appears to have been an "out-of-time" appeal, the Supreme Court has held that, "where a state court grants a criminal defendant the right to file an out-of-time direct appeal during state collateral review, but before the defendant has first sought federal habeas relief, his judgment is not yet 'final' for purposes of §2244(d)(1)(A)." *Stokes v. Cain*, 2010 WL 1923660 (5th Cir. 2010), quoting *Jimenez v. Quarterman*, 129 S.Ct. 681, 686 (2009). Thus, "'the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review' must reflect the conclusion of the out-of-time direct appeal, or the expiration of the time for seeking review of that appeal." *Id.*, at 686-687. Accordingly, Flowers' conviction and sentence did not become final until after the conclusion of his out-of-time direct appeal, which occurred ninety (90) days after November 9, 2006 (or on February 8, 2007), when he did not seek writs from the U.S. Supreme Court concerning the Louisiana Supreme Court's denial of writs on

## LAW & ANALYSIS

In order for this Court to grant an application for a writ of habeas corpus as to any claim which has been previously adjudicated on the merits in state court, the Court must find that adjudication of such claim: (1) resulted in a decision that is contrary to, or involves an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that is based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(1) and (d)(2). In addition, determinations of factual issues made by state courts shall be presumed correct, unless particular statutory exceptions to 28 U.S.C. § 2254(d) are implicated, and the applicant has the burden of rebutting that "presumption of correctness" by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Williams v. Collins*, 16 F.3d 626 (5th Cir. 1994). Thus, the presumption of correctness is properly invoked if the petitioner fails to contend that any exceptions to §2254(d) are applicable to his case and if the Court finds that there were no defects in the state court's procedures. *Id.* at 631.

**I.    Denial of confrontation rights:**

In his first claim, Flowers contends that he was denied his constitutional right to confrontation by the state trial court's admission into evidence of certain hearsay

---

direct appeal. Because Flowers filed his post-conviction relief application within that ninety (90) day period, on or about November 16, 2006, and his post-conviction proceedings remained pending until January 7, 2008, his habeas petition, which was filed less than one (1) year after January 7, 2008, on September 23, 2008, is timely. *See,* 28 U.S.C. §2244(d)(1)(A) and (d)(2).

3

statements made by a police officer who testified at trial concerning his investigation of the crime in question. In particular, Flowers asserts that Police Chief Eddie Stewart ("Chief Stewart") should not have been permitted to testify that the victim, Lee Esther Keller ("Ms. Keller"), identified Flowers as the individual who robbed her. Flowers also contends that Chief Stewart should not have been allowed to testify that co-defendant, Amber Bryant, implicated Flowers in the armed robbery.

In considering this claim on appeal, the Louisiana First Circuit Court of Appeals found that, since Chief Stewart testified regarding the substance of information related to him during his investigation and did not limit his testimony to his actions taken in response to that information, his testimony concerning the identification of Flowers as a perpetrator by the victim and by Amber Bryant was inadmissible hearsay. *See*, First Circuit's opinion, R. Doc. 1-1, p. 17 ("The testimony regarding the out-of-court statements of the defendant's involvement in the crime by individuals who did not testify at trial should not have been admitted"). However, the First Circuit went on to find that the improper admission of Chief Stewart's hearsay statements constituted "harmless error." Specifically, at page 6 of its opinion, the First Circuit stated:

> After reviewing the record in this case, we find that the error in allowing the hearsay testimony in question was harmless beyond a reasonable doubt. Chief Stewart's testimony regarding the defendant's involvement in the armed robbery was clearly cumulative to Ms. Keller's trial testimony, which was presented to the jury before Chief Stewart testified. In her testimony, Ms. Keller repeatedly and unequivocally identified the defendant as one of the robbery perpetrators. Ms. Keller testified that she was absolutely certain that the defendant, with whom she was acquainted prior to the offense, was the perpetrator who struck her in the head with a gun during the robbery. Ms. Keller also identified the defendant as the perpetrator in a statement to the police shortly after the

> robbery. Considering the certainty of the identification by Ms. Keller, it is obvious that the guilty verdict herein was surely unattributable to the erroneous admission of Chief Stewart's hearsay testimony.

*See*, First Circuit Opinion, R. Doc. 1-1, p. 6.

In support of his argument that the First Circuit's "harmless error" determination is contrary to clearly established federal law, Flowers relies upon the U.S. Supreme Court case, *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d (2004). In *Crawford*, the Supreme Court held that the admission of a wife's out-of-court statements to police officers, concerning an incident in which the defendant, her husband, allegedly stabbed a victim, violated the Confrontation Clause. In the present case, the First Circuit conceded that Chief Stewart's testimony concerning the out-of-court statements of the victim and of Amber Bryant constituted inadmissible hearsay in violation of the Confrontation Clause and that such statements should not have been admitted. Thus, *Crawford* simply supports the First Circuit's decision in that regard. The *Crawford* case, however, does nothing to demonstrate that the First Circuit's "harmless error" analysis is contrary to or an unreasonable application of clearly established federal law. To make that showing, Flowers must demonstrate that the trial court's admission of Chief Stewart's hearsay testimony "had a substantial and injurious effect or influence on the verdict." *Cady v. Quarterman*, 2009 WL 1437832, *7 (N.D.Tex. 2009), citing *Brecht v. Abrahamson*, 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d (1993) and *Guidry v. Dretke*, 397 F.3d 306, 330-31 (5th Cir. 2005). Flowers has failed to do so.

Flowers concedes that Chief Stewart's hearsay testimony identifying him as the perpetrator could be considered cumulative of that of the victim. However, he contends

that Chief Stewart's testimony is nevertheless prejudicial since less weight may be given to the victim's testimony because she was "elderly" and "at best, a totally shaky, confused, and incoherent witness." This Court is not permitted to judge the credibility of witnesses upon habeas review and must defer to the credibility determinations made by the state courts.[3] Based upon the undersigned's review of the record, there does not appear to be any reason to disagree with the First Circuit's assessment of the unequivocal nature of the victim's testimony and of the victim's credibility. It appears that the victim knew the defendant prior to the crime in question and that she clearly identified him as the perpetrator several times during the course of her testimony without any confusion or incoherence. Considering such unequivocal identification testimony against the defendant, which was elicited before Chief Stewart even testified, the undersigned is not clearly convinced that the admission of Chief Stewart's hearsay testimony had a substantial effect or influence on the jury's verdict. Put another way, the undersigned cannot find that, if Chief Stewart's statements had not been admitted, the outcome of Flowers' trial likely would have been different. Accordingly, Flowers is not entitled to relief on this claim.

## II.  Defective bill of indictment:

Flowers next contends that the bill of indictment against him is fatally defective

---

[3] *See, Coleman v. Quarterman*, 456 F.3d 537 (5th Cir. 2006)(Credibility determinations by state courts are afforded deference); *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003)("A federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system. Where 28 U.S.C. §2254 applies, our habeas jurisprudence embodies this deference"); *Pondexter v. Dretke*, 346 F.3d 142, 147-49 (5th Cir. 2003)(finding that the district court "failed to afford the state court's factual findings proper deference" by "rejecting the state court's credibility determinations and substituting its own views of the credibility of witnesses").

because it does not contain the name of the victim. He contends that the name of the victim is required in the bill of indictment by La. C.Cr.P. art. 473. Article 473 provides the following:

> When the name of the person injured is substantial and not merely descriptive, such as when the injury is to the person, as in murder, rape, or battery, the indictment shall state the true name of the victim or the name, appellation, or nickname by which he is known. If the name, appellation, or nickname of the victim is not known, it is sufficient to so state and to describe him as far as possible...

*See*, La. C.Cr.P. art. 473.

The Louisiana Supreme Court, however, has held that an indictment, which charges a defendant with armed robbery on a certain date and at a certain premises but fails to name the specific individual who is the victim of the crime, cannot be challenged after a defendant's conviction, where the deficiency in the indictment was not questioned prior to or during the trial, and the deficiency did not deprive the defendant of a lack of opportunity to plead, prepare, or try his defense. *State v. James*, 305 So.2d 514, 516 (La. 1974). In other words, a defendant may not challenge the technical sufficiency of the indictment where he was fairly informed by the indictment of the charges against him and was not prejudiced by surprise or lack of notice. *Id.*; *Richthofen v. Cain*, 2008 WL 630477 (E.D.La. 2008), citing several state cases (An attack on the sufficiency of an indictment should be rejected unless the indictment failed to give fair notice of the offense charged or failed to set forth an identifiable offense. The test to determine the sufficiency of a bill is whether it is misleading to a defendant).[4]

---

[4] The U.S. Fifth Circuit Court of Appeals has recognized that the sufficiency of a state charging instrument, such as an indictment, is fatally defective only when there are

Additionally, pursuant to La.C.Cr.P. art. 464, an indictment is simply required to set forth "a plain, concise, and definite written statement of the essential facts constituting the offense charged. It shall state for each count the official or customary citation of the statute which the defendant is alleged to have violated." La. C.Cr.P. art. 464.[5] La.C.Cr.P. art. 465 also authorizes the use of specific short form indictments in charging certain offenses, including armed robbery -- the offense at issue in this case. The constitutionality of such short form indictments has been consistently upheld by the Louisiana Supreme Court. *Richthofen*, citing *State v. Taylor*, 781 So.2d at 1218, citing *State v. Baylis*, 388 So.2d 713, 718-19 (La. 1980) and *State v. Liner*, 373 So.2d 121, 122 (La. 1979).

The Court's review of the indictment in the present case indicates that it meets the requirements of Louisiana law. First, armed robbery is not one of the offenses specifically listed in La.C.Cr.P. art. 473, which would definitively require the listing of the victim's name in the indictment. Secondly, the indictment properly charges Flowers in compliance with La.C.Cr.P. art. 465(A)(42), which provides a short form indictment for armed robbery as follows: "A.B., while armed with a dangerous weapon, robbed C.D."[6] Additionally, the

---

no circumstances under which there could be a valid conviction based upon that instrument and that "determination can be made only by looking to the law of the state." *Richthofen*, at 17, quoting *Liner v. Phelps*, 1201, 1203 (5th Cir. 1984). While, for many years, Louisiana courts insisted that charging documents be technically sufficient, the Louisiana Supreme Court changed that course in *State v. James*, 305 So.2d 514 (La. 1974).

[5] Article I, §13 of the Louisiana Constitution also only requires that an indictment inform a defendant of the nature and cause of the accusation against him.

[6] The indictment in question states that "[o]n this the 16th day of December, 2003, the Grand Jury of the Parish of East Feliciana, State of Louisiana, charges that on or about the 31st day of October, 2003, at and in the Parish, District and State aforesaid,

Court finds that Flowers was fairly informed by the indictment of the charges against him without the necessity of including the victim's name, and it does not appear that the omission of the victim's name misled the defendant to his prejudice.

Finally, Flowers has not cited to any clearly established federal or constitutional law indicating that the failure to include the victim's name in the indictment in question renders it fatally defective.[7]  At a minimum, the Sixth Amendment to the U.S. Constitution requires

---

James Flowers committed the offense(s) of armed robbery as defined by Louisiana Revised Statute[] 14:64, in that he . . . took anything of value belonging to another or that is in the immediate control of another by use of force or intimidation, while armed with a dangerous weapon." *See, Richthofen*, at 18 (where the Eastern District of Louisiana similarly concluded that a short form indictment for second degree murder was in compliance with La.C.Cr.P. art. 465(A)(32) even though it did not specifically name the victim).

[7] While the undersigned has located one case out of the U.S. First Circuit Court of Appeals, *U.S. v. Tomasetta*, 429 F.2d 978 (1st Cir. 1970), wherein an indictment was dismissed on the ground that it failed to name the alleged victim and contained other deficiencies, such case has been distinguished by several more recent cases and is distinguishable from the present matter on similar grounds.  For example, most recently, in *U.S. v. Hill*, 2010 WL 128314 (N.D.Ga. 2010), the U.S. District Court for the Northern District of Georgia specifically noted that the First Circuit's holding in *Tomasetta* was expressly limited by the First Circuit to the "specific circumstances presented [in that case] and the overall vagueness of the charge in the indictment with respect to the exact location and nature of the offense charged."  *Hill*, at *7, citing *Tomasetta*, at 980-81.  The court, in *Tomasetta*, held that the indictment was insufficient to comply with Fed.R.Cr.P. 7(c) because it not only failed to identify the victim in an extortion case but also was otherwise too vague to permit the defendant to mount an adequate defense to the charge.  *Id.*  In reaching that conclusion, the First Circuit noted that no one factor was determinative and that the failure to specify the means by which the alleged threats were communicated, the failure to specify with greater precision the location of the alleged offense, and the failure to name the victim, taken alone, might not have led to dismissal of the indictment; instead, it was the cumulation of those various deficiencies that made it unfair to require the defendant to answer the charges against him.  *Id.*  In contrast, in *Hill* and the present case, the allegations of the indictment are not as vague as those in *Tomasetta*.  Despite the Government's failure to name the victim in the indictment in *Hill* and in the present case, the indictments are nevertheless specific as to the date and place and nature of the alleged offense, such that they are not fatally defective even under the standards set forth in *Tomasetta*.  *See, U.S. v. Hallock*, 941 F.2d 36 (1st Cir. 1991)(*Tomasetta* did not establish an inflexible floor of information

that an indictment include the information and facts needed to inform a defendant of the nature of the crime and allow him or her an opportunity to prepare a defense to the allegations. The indictment in the present case sets forth: (1) the date of the alleged offense; (2) the parish, district, and state where the alleged offense occurred; (3) the charged offense by name and statute number; and (4) the elements of the charged offense, tracking the language of the cited statute. Similar indictments have been held to meet the requirements of the Sixth Amendment. *U.S. v. Butt*, 745 F.Supp. 34 (D.Mass. 1990)(Generally, courts will uphold an indictment which "track[s] the language of the statute and, in addition, do[es] little more than state the time and place in approximate terms"); *United States v. Alfonso*, 143 F.3d 772, 776 (2d Cir. 1998)(An indictment is sufficient when it does no more than accurately state the elements of the crime and provide an approximate date and location of the alleged robbery). Accordingly, this claim should also be dismissed.

### III.     Ineffective assistance of counsel:

A habeas petitioner seeking to prove ineffective assistance of counsel must meet the two-pronged burden of proof set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The petitioner must affirmatively demonstrate:

(1)     that his counsel's performance was "deficient", *i.e.*, that counsel made errors so serious that he was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment; and

(2)     that the deficient performance "prejudiced" his defense, *i.e.*, that

---

required for a valid indictment. On the contrary, the court stated therein that "arbitrary rules as to the necessity . . . of a given averment have no place in the analysis, as the question is whether the indictment as a whole conveys sufficient information to properly identify" the allegedly unlawful conduct).

> counsel's errors were so serious as to deprive the defendant of a fair trial, a trial where the result is reliable.

*Strickland*, 104 S.Ct. at 2064.[8]

Flowers contends that his counsel was ineffective in failing to perform proper pre-trial discovery; failing to investigate, interview and call witnesses; failing to prepare and present a defense; and in denying Flowers full confrontation of witnesses. His arguments

---

[8] To satisfy the deficiency prong of the *Strickland* standard, the petitioner must demonstrate that his counsel's representation fell below an objective standard of reasonableness as measured by prevailing professional standards. *Martin v. McCotter*, 796 F.2d 813, 816 (5th Cir. 1986), *cert. denied*, 479 U.S. 1057, 107 S.Ct. 935, 93 L.Ed.2d 985 (1987). The reviewing court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional competence and that, under the circumstances, the challenged action might be considered sound trial strategy. See *Bridge v. Lynaugh*, 838 F.2d 770, 773 (5th Cir. 1988). The court, therefore, must make every effort to eliminate the distorting effects of hindsight and to evaluate the conduct from counsel's perspective at the time of trial. *Martin*, 796 F.2d at 817. Great deference is given to counsel's exercise of his professional judgment. *Bridge*, 838 F.2d at 773; *Martin*, 796 F.2d at 816. When it is apparent that the alleged incompetent acts of the attorney were in fact conscious strategic or tactical trial decisions, review of the acts must be "highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 106 S.Ct. 2574, 2587 91 L.Ed.2d 305 (1986). Mere error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error has no effect on the judgment. *Strickland*, 104 S. Ct. at 2066.

If the petitioner satisfies the first prong of the *Strickland* test, his petition nonetheless must also affirmatively demonstrate prejudice from the alleged errors. *Earvin v. Lynaugh*, 860 F.2d 623, 627 (5th Cir. 1988). To satisfy the prejudice prong of the *Strickland* test, it is not sufficient for the petitioner to show that the alleged errors had some conceivable effect on the outcome of the proceeding. *Strickland*, 104 S. Ct. at 2067. To prove prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 104 S.Ct. at 2068. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome of the proceeding. *Id.* The habeas petitioner need not show that his counsel's alleged errors "more likely than not" altered the outcome of the case; he must instead show a probability that the errors are "sufficient to undermine confidence in the outcome." *Martin*, 796 F.2d at 816-17. A conscious and informed tactical decision cannot be the basis for constitutionally ineffective assistance of counsel unless it is "so ill-chosen that it permeates the entire trial with obvious unfairness." *Garland v. Maggio*, 717 F. 2d 199, 206 (5th Cir. 1982).

concerning those alleged failings on the part of his counsel, however, are entirely conclusory. For example, although Flowers lists twelve (12) different kinds of pre-trial discovery motions that his counsel purportedly should have filed, he does not indicate what information those motions may have revealed that could have changed the outcome in his case. Similarly, while Flowers contends generally that his counsel failed to investigate, interview, call, and confront witnesses, he fails to identify any specific witnesses and fails to explain what information could have been elicited from those witnesses that would have assisted his case. He also fails to identify what defense his counsel should have asserted on his behalf (*i.e.*, an alibi defense, an insanity defense, etc.) and how it would have changed the outcome of his case.

The Fifth Circuit has held that, in order to establish that counsel was ineffective due to a failure to investigate the case or to discover and present evidence, the petitioner must do more than merely allege a failure to investigate – he must state *with specificity* what the investigation would have revealed, what *specific evidence* would have been disclosed, and how the evidence would have altered the outcome of the proceedings. *Anderson v. Collins*, 18 F.3d 1208, 1221 (5th Cir. 1994)(Emphasis added); *Nelson v. Hargett*, 989 F.2d 847, 850 (5th Cir. 1993); *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989); *Lockhart v. McCotter*, 782 F.2d 1275, 1282-83 (5th Cir. 1986), *cert. denied*, 479 U.S. 1030, 107 S.Ct. 873, 93 L.Ed.2d 827 (1987); *Alexander v. McCotter*, 775 F.2d 595, 603 (5th Cir. 1985). Furthermore, without concrete evidence describing the potential testimony of witnesses that defense counsel failed to call, the Court does not know whether defense counsel made a

strategic decision not to speak to or call those witnesses.[9]  Given the conclusory nature of Flowers' arguments concerning his counsel's alleged failure to investigate and present his case, the undersigned cannot even begin to apply *Strickland*'s standards to determine whether his attorney's conduct was deficient and whether he was prejudiced by any

---

[9] *See, Rose v. Johnson*, 141 F.Supp.2d 661, 692 (S.D. Tex 2001), citing *Beavers v. Balkcom*, 636 F.2d 114, 116 (5th Cir. 1981)(An attorney's proper tactical choice not to conduct an investigation should not be confused with a breach of the duty to investigate . . . In proving ineffective assistance of counsel, the petitioner must demonstrate that an alleged breach of his attorney's duty to investigate "resulted in an actual and substantial disadvantage to the course of his defense . . . The petitioner may not simply allege, but must "affirmatively prove," prejudice).

*See also, Moore v. Quarterman*, 534 F.3d 454 (5th Cir. 2008)(The petitioner contended that he received ineffective assistance of counsel because his trial counsel failed to investigate adequately the facts surrounding the shooting. He claimed that his lawyer should have questioned several witnesses, and had counsel done so, he could have presented more effectively the petitioner's claim that he shot the victims in self-defense or, alternately, out of sudden passion. The Fifth Circuit held that the petitioner "undebatably" failed to carry his burden of proving ineffective assistance of counsel because he failed to provide any evidence regarding the thought process underlying his trial counsel's decisionmaking. The court of appeals noted that the petitioner made no effort to inquire of his attorney as to what steps were taken to investigate the shooting, so the court did not know whether the counsel made a strategic decision not to speak with those witnesses or what might have been the basis of that decision. The Fifth Circuit found "crucial" the fact that it did not know what petitioner had told his lawyer as well as the information about which the proposed witnesses would have testified. The petitioner vaguely argued that the witnesses would have testified to "something favorable," but the court did not know what. The court found that the petitioner's "complete failure to present *any* evidence strongly argue[d] against [his] claims that his trial counsel's decisions were not objectively reasonable or that he was prejudiced"); *Anderson,* at 1221 (5th Cir. 1994)("Anderson again makes only brief and conclusory allegations that [his lawyer's] representation was deficient because of his failure to investigate and develop useful evidence. Typically, he does not specify what this investigation would have divulged or why it would have been likely to make any difference in his trial or sentencing . . . [W]ithout a specific, affirmative showing of what the missing evidence or testimony would have been, 'a habeas court cannot even begin to apply [*Strickland*'s] standards' because 'it is very difficult to assess whether counsel's performance was deficient, and nearly impossible to determine whether the petitioner was prejudiced by any deficiencies in counsel's performance'").

13

deficiencies in his counsel's conduct.  Accordingly, this claim should also be dismissed.

## **RECOMMENDATION**

For the above reasons, it is recommended that the Petition for Writ of Habeas Corpus filed by James Flowers (R. Doc. 4) should be **DISMISSED WITH PREJUDICE**.

Signed in chambers in Baton Rouge, Louisiana, October 22, 2010.

_____
**MAGISTRATE JUDGE CHRISTINE NOLAND**